

**SO ORDERED,**

*Judge Jason D. Woodard*

United States Bankruptcy Judge

The Order of the Court is set forth below. The case docket reflects the date entered.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| DAVID D. NEW and | ) | Case No.:  17-11891-JDW |
| MARY K. NEW, | ) | |
| | ) | |
| Debtors. | ) | Chapter  13 |

| | | |
|---|---|---|
| LAVINIA DUMITRACHE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | A.P. No.:  17-01039-JDW |
| | ) | |
| DAVID D. NEW, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

This adversary proceeding came before the Court for trial on August 16, 2018, on the *Complaint to Determine Nondischargeability of Debt and*

---

[1] This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052.

1

*Allowed Claim as to Lavinia Dumitrache and [her son]* (the "Complaint") (A.P. Dkt. #1) filed by the creditor-plaintiffs Lavinia Dumitrache and her son (the "Plaintiffs") against the debtor-defendant David D. New (the "Defendant"). Both Ms. Dumitrache and the Defendant appeared and testified.

The Plaintiffs were previously awarded attorney's fees and costs in Tennessee state court proceedings in which they secured orders of protection in their favor against the Defendant, the former husband of Ms. Dumitrache and the father of her plaintiff son. The Plaintiffs filed the Complaint, seeking a determination, among other things, that this debt is a nondischargeable domestic support obligation under § 523(a)(5) of the Bankruptcy Code.[2] The Defendant argues that the debt is not in the nature of support, but rather falls within the catch-all domestic provisions of 11 U.S.C. § 523(a)(15), and is therefore dischargeable in a chapter 13 case. Having considered the evidence, the argument of counsel, and the law, the Court concludes that the amounts owed to the Plaintiffs by the Defendant are domestic support obligations, and the debt is both nondischargeable in bankruptcy and a priority debt which must be paid in full over the life of the Defendant's chapter 13 plan as required by §§ 1322(a)(2) and 507(a)(1)(A).

---

[2] All statutory references are to Title 11 of the United States Code (the "Bankruptcy Code"), unless otherwise indicated.

2

## I. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334, and the *United States District Court for the Northern District of Mississippi's Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 6, 1984. This is a core proceeding as set forth in 28 U.S.C. § 157(b)(2)(A),(B), (I), (L), and (O).

## II. FINDINGS OF FACT[3]

After Ms. Dumitrache and the Defendant divorced, Ms. Dumitrache lived in Tennessee with their son, who would travel to Mississippi to spend time with the Defendant. Ms. Dumitrache credibly testified that at some point, she was contacted by her son's school regarding the suspected abuse of her son by the Defendant. The school and Ms. Dumitrache contacted the Tennessee Department of Children's Services ("TDCS"), but, because the abuse took place in Mississippi, TDCS indicated that it did not have jurisdiction over the allegations. The Mississippi Department of Child Protection Services was also contacted, but also raised jurisdictional issues, because Ms. Dumitrache's son is a resident of Tennessee. Both agencies urged Ms. Dumitrache to seek protective orders in Tennessee state court, as neither agency could do so because of the jurisdictional complications.

---

[3] To the extent any of the findings of fact are considered conclusions of law, they are adopted as such. To the extent any of the conclusions of law are considered findings of fact, they are adopted as such.

3

A. The State Court Cases

Ms. Dumitrache sought a protection order for herself and her son against the Defendant in the General Sessions Criminal Court of Shelby County, Tennessee. The Honorable Yolanda Kight, Magistrate Judge, heard the case on March 30, 2016. Judge Kight stated on the record that she found the testimony of the Plaintiffs' witnesses to be credible and that the Plaintiffs had met their burden of proof. Judge Kight cited testimony in the record pertaining to the abuse, which included the Defendant spanking the child with a thorny bush and barbed wire, forcing the child to pick up horse feces with his bare hands and put it in his mouth, and calling the child an "S-O-B." Judge Kight also indicated that she believed that the child was fearful of his father, having nightmares that the Defendant was going to kill him and his mother. The Plaintiffs were granted Orders of Protection against the Defendant at the March 30, 2016 hearing (the "Orders of Protection").

On April 6, 2016, Judge Kight entered an Order Supplementing Orders of Protection Awarding Petitioners Judgment for Attorney's Fees and Costs in the amount of $8,109.50 (for attorneys' fees in the amount of $7,500.00 and costs of $609.50)(the "General Sessions Order").

The Defendant then filed suit in the Chancery Court of Shelby County, Tennessee, regarding the Orders of Protection.[4] On March 20, 2017, Chancellor Joedae L. Jenkins entered an Order Awarding Defendants [Plaintiffs here] Judgment for Attorney Fees, Litigation Expenses, and Discretionary Costs (the "Chancery Court Order"). In the Chancery Court Order, the Defendant was ordered to pay the Plaintiffs an additional $25,398.21 in fees and expenses incurred in their defense of the Orders of Protection in that court ($24,000.00 in additional attorney's fees and $1,398.21 in additional costs). Together with the General Sessions Order, the Plaintiffs were awarded a total of $33,507.71 ("the Fees") for obtaining and defending the Orders of Protection. The Chancery Court Order provided that Fees were awarded pursuant to § 36-5-103(c) of the Tennessee Code, which allows for reasonable fees to be awarded in litigation to protect a child. Neither Tennessee court engaged in any analysis or balancing of the parties' respective financial need or ability to pay the Fees; such an analysis is not required under applicable Tennessee law.

### B. The Bankruptcy Case

The Defendant then filed his chapter 13 bankruptcy petition on May 24, 2017 (Bankr. Dkt. # 1). He scheduled the attorney's fees and costs awarded in the Chancery Court Order to the Plaintiffs as a general,

---

[4] This action filed by the Defendant appears to be in the nature of an appeal.

unsecured debt, in the amount of $25,398.21 (Bankr. Dkt. # 8). The fees awarded in the General Sessions Order are not scheduled. On September 5, 2017, the Plaintiffs filed a Motion to Dismiss (the "Motion to Dismiss") (Bankr. Dkt. # 36), alleging that the bankruptcy case should be dismissed because the plan was proposed in bad faith under § 1322(a)(1)(2). The Plaintiffs also filed an Objection to Confirmation of the Chapter 13 Plan (the "Objection to Confirmation") (Bankr. Dkt. # 37), alleging that the plan cannot be confirmed under § 1325 because, among other reasons, it fails to provide for full payment of the Fees as a domestic support obligation over the life of the plan.

The Plaintiffs filed their Complaint in this adversary proceeding the same day as the Motion to Dismiss and Objection to Confirmation (A.P. Dkt. # 1). The Plaintiffs ask the Court to declare the Fees to be (1) domestic support obligations under §§ 101(14A)(A) of the Bankruptcy Code, (2) nondischargeable in this bankruptcy case pursuant to § 523(a)(5), and (3) treated as a priority claim under §§ 507 and 1322(a)(2). Because of the overlap in the relief requested in the various filings, the Court consolidated the issues into this adversary proceeding to allow for a single discovery period and trial (Bankr. Dkt. # 57, 62).

### III. CONCLUSIONS OF LAW

Section 523 of the Bankruptcy Code outlines certain exceptions to discharge in bankruptcy proceedings. Exceptions to discharge are to be construed strictly against the objecting creditor in order to give effect to the fresh start policy of the Bankruptcy Code. *Hudson v. Raggio & Raggio, Inc. (In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997) (*citing Murphy & Robinson Inv. Co. v. Cross (In re Cross)*, 666 F.2d 873, 880 (5th Cir. 1982)). The creditor bears the burden of proof of establishing by a preponderance of the evidence that the debt in question should be excepted from discharge. *Grogan v. Garner*, 498 U.S. 279, 286 (1991).

In any bankruptcy case, "a domestic support obligation" is nondischargeable. 11 U.S.C. §§ 1328(a)(2), 523(a)(5). Other debts owed "to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that [are] incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record…" are nondischargeable in a chapter 7 case, but dischargeable in a chapter 13 case. 11 U.S.C. § 523(a)(15); *Humphries v. Rogers (In re Humphries)*, 516 B.R. 856, 865 (Bankr. N.D. Miss. 2014). The Defendant and his wife are currently in a chapter 13 case.

The Fifth Circuit Court of Appeals has noted the challenge in determining whether a debt is in the nature of support. "'[W]hat may appear

7

to be a mere division of assets may in fact . . . contain a substantial element of alimony-substitute, support or maintenance, however termed.' Thus, we must place substance over form to determine the true nature and purpose of the award, regardless of the label used." *Joseph v. J. Huey O'Toole, P.C. (In re Joseph)*, 16 F.3d 86, 87–88 (5th Cir. 1994) (quoting *In re Nunnally*, 506 F.2d 1024, 1027 (5th Cir. 1975)). A determination of "[w]hether a particular obligation constitutes alimony, maintenance, or support … is a matter of federal bankruptcy law, not state law." *Biggs v. Biggs (In re Biggs)*, 907 F.2d 503, 504 (5th Cir. 1990).

The Fifth Circuit has consistently held costs incurred in court proceedings that benefit the parties' child to be in the nature of support. *Dvorak v. Carlson (In re Dvorak)*, 986 F.2d 940, 941 (5th Cir. 1993).[5] In *Dvorak*, the debtor was ordered by a state court to pay attorney's fees both to her ex-husband's attorney and the guardian ad litem for her daughter, following custody litigation. *Id.* The bankruptcy court held the debt to be nondischargeable. *Id.* The Fifth Circuit affirmed, holding that "[b]ecause the

---

[5] Some courts hold that the result reached in *Dvorak* would be different after the 2005 changes to the Bankruptcy Code, because the definition of "domestic support obligation" in § 101(14A) now specifies the specific entities that may assert claims related to a "domestic support obligation," and an attorney is not one of those entities. *Loe, Warren, Rosenfield, Katchers, Hibbs, & Windsor, P.C. v. Brooks (In re Brooks)*, 371 B.R. 761, 768 (Bankr. N.D.Tex. 2007); *Contra Morris v. Allen (In re Morris)*, 454 B.R. 660, (Bankr. N.D.Tex. 2011)(concluding that the award of attorneys' fees belongs to the former spouse and is thus a nondischargeable domestic support obligation). The Court need not analyze this issue here, because in this case, the Fees were awarded directly to the Plaintiffs and thus meet the literal requirement that a domestic support obligation be "owed to or recoverable by . . . a former spouse, or child of the debtor. . ." 11 U.S.C. § 101(14A)(A)(i).

fees charged by Appellees were incurred during a court hearing that was for [the daughter's] benefit and support, and because the state court then ordered the fees to be paid by Appellant, we conclude that the fees constitute a non-dischargeable debt under § 523(a)(5)." *Id.*

Four years later, the Fifth Circuit extended *Dvorak*, holding that "attorney's fees related to establishment of support obligations non-dischargeable without reference to the financial need of the support obligee at the beginning of the litigation." *Hudson*, 107 F.3d at 358. The Fifth Circuit explained that the purpose of the proceedings was to provide for the best interests of the children and was therefore in the nature of support for the children, regardless of whether the custodial parent could afford litigation. *Id.*

These cases demonstrate the Bankruptcy Code's elevation of family support obligations over a debtor's fresh start goal. "Congress enacted § 523(a)(5) in an effort to resolve the conflict between the fresh start policy of the bankruptcy discharge and the family law policy which recognizes the need of ensuring the necessary financial support for the disadvantaged spouse after the termination of the marriage…." *Sateren v. Sateren (In re Sateren)*, 183 B.R. 576, 581 (Bankr. D.N.D. 1995).

Most cases regarding the determination of dischargeability of attorney's fees as a domestic support obligation result from standard custody

9

and divorce litigation. These cases generally do require a balancing of the parties' need versus their respective ability to pay, because the "balancing of need" analysis is the tool used by state courts in considering whether to award alimony of whatever form (including attorney's fees) to a former spouse. *See, e.g., Blackburn-Gardner v. Edwards (In re Edwards)*, 261 B.R. 523 (Bankr.M.D.Fla. 2001); *Ferguson v. Ferguson,* 639 So.2d 921 (Miss. 1994). But the kind of support the Plaintiffs received from the Fees in this case is different from a typical award of alimony, in that no needs-based analysis is required or appropriate, as set forth in *Dvorak* and confirmed in *Hudson*.

The Fifth Circuit case of *Rogers v. Morin* is somewhat analogous. *Rogers v. Morin (In re Rogers),* 189 Fed.Appx. 299 (5th Cir. 2006).[6] During the course of custody litigation, the debtor accused her ex-husband of sexually abusing their daughter. *Id.* Following a two-week hearing, the state court determined that the defendant had not abused his daughter and awarded him $39,350.67 for fees incurred in defending the allegations. *Id.* at 300. The Fifth Circuit found that the debt for attorney's fees "arose as a direct result of the adjudication of Rogers's allegations of sexual abuse," and

---

[6] Pursuant to Fifth Circuit Rules 28.7, 47.5.3, and 47.5.4, and Federal Rule of Appellate Procedure 32.1, this "unpublished" decision is not binding precedent. Nevertheless, it is useful, as it illustrates the consistency of the Fifth Circuit's jurisprudence on this issue.

10

that the resolution of those allegations was for the daughter's benefit and well-being. *Id.* at 302. The fee award was therefore nondischargeable. *Id.*

Similarly, in this case, the Court must consider the dischargeability of a debt arising from legal proceedings instituted by Ms. Dumitrache to protect herself and her child from the abuse of a debtor-parent, the Defendant. In another analogous case, a court was called upon to determine whether fees awarded for the litigation of sexual abuse allegations against the debtor-parent, created support obligations. *Truhlar v. Doe (In re Doe)*, 93 B.R. 608 (Bankr. W.D. Tenn. 1988). In holding that they did, the *Doe* court held that "[a] parent may not abuse a child and then easily argue that attorneys' fees and costs arising from the protection of that child lack the character of maintenance and support." *Id.* at 615. In yet another similar case, the court held that "[a] proceeding to determine whether child abuse is occurring … focuses on the child's best interests and clearly falls within the broad scope of the term 'in the nature of support' in § 523(a)(5)." *Rackley v. Rackley (In re Rackley)*, 502 B.R. 615, 626–27 (Bankr. N.D. Ga. 2013) (citation omitted).

In determining whether the Fees are in the nature of support, this Court considers the intentions of the Tennessee state courts, which awarded the Fees because the case involved ". . . litigation pertaining to parenting . . . due to allegations of a hostile situation involving the child and threatening harm to the child," pursuant to T.C.A. § 36-5-103(c). Clearly, the Plaintiffs

11

incurred the Fees in the pursuit and defense of the Orders of Protection. The purpose of those proceedings was to keep the Plaintiffs physically safe from harm and abuse by the Defendant. The state courts found that the Defendant perpetrated abuse against the Plaintiffs and that Orders of Protection were necessary and appropriate to protect them from further harm. The Court cannot imagine a situation *more* in the nature of actual support. The Defendant's suggestion that the Fees are not in the nature of support, and that Ms. Dumitrache should bear even a portion of the costs of protecting herself and her son against the Defendant's abuse, are patently absurd.

## IV. CONCLUSION

The Plaintiffs have proven, by a preponderance of the evidence, that the state court judgments for the Fees incurred by the Plaintiffs in seeking and defending the Orders of Protection are in the nature of support pursuant to § 101(14A)(A). Accordingly, the award of $33,507.31 is nondischargeable pursuant to §§ 1328(a)(2) and 523(a)(5). Further, because the Fees are a domestic support obligation, the Plaintiffs' Objection to Confirmation is well-taken, and the Defendant must file an amended chapter 13 plan to treat them as such. A separate Order Sustaining the Objection to Confirmation and a separate Final Judgment will be entered simultaneously herewith. At

the trial, the Plaintiffs did not pursue the Motion to Dismiss, so a separate Order Denying the Motion to Dismiss will also be entered.

##END OF OPINION##